# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONNIE R. WALLACE, AND | ) | CASE NO. 102-13164 |
| SARAH V. WALLACE, | ) | |
| | ) | CHAPTER 11 |
| Debtors. | ) | |
| | ) | JUDGE MARIAN F. HARRISON |
| | ) | |
| | ) | |
| RONNIE R. WALLACE, AND | ) | ADV. NO. 104-0670A |
| SARAH V. WALLACE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIRST NATIONAL BANK OF | ) | |
| PULASKI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

## MEMORANDUM OPINION
_____

This matter came to be heard upon First National Bank of Pulaski's (hereinafter "First National") motion for summary judgment. Based on the pleadings and argument of counsel, the Court finds that summary judgment should be granted to First National.

## I. BACKGROUND

1. The debtors filed for bankruptcy on November 6, 2002.

2. On or about October 25, 2002, which was during the 90 days preceding the petition date, a transfer of property was made to or for the benefit of First National in the total amount of $200,000.

3. The debtors had an interest in the transferred property.

4. The transfer was to or for the benefit of First National.

5. The transfer was for or on account of an antecedent debt owed by one of the debtors before the transfer was made.

6. In 1998, the debtors granted a security interest to First National in cattle and after acquired property of the same type. Pursuant to the security agreement, this security interest secured all debt owed by the debtors to First National, including a specific debt of $325,740.20 and "each and every debt, liability and obligation of every type and description whether such debt, liability or obligation now exists or is incurred or created in the future."

7. First National also had a security interest in real property, which was surrendered through the bankruptcy case and valued at $535,000 by this Court.

8. First National's security agreements provided for cross-collateralization.

9. The transfer in question occurred after the debtors sold substantially all of their cattle at an auction on October 7, 2002, at a gross price of $732,000 and collected at least $680,000 of the total sale price.

10. When the debtors sold the cattle, First National held a perfected security interest in the cattle and the proceeds therefrom. However, First National did not take any additional action following the sale to continue the perfection in the proceeds.

11. The proceeds from the cattle sale were deposited in the debtors' operating account and commingled with other funds.

12. The $200,000 payment to First National came from the livestock proceeds through the debtors' operating account.

13. Of the $200,000 transfer, First National applied $6840.07 to the cattle loan and $186,319.86 to the real estate loans.

14. The balance on the cattle loan is $62,752.98, and the balance on the real estate loan is $61,917.60 (after the surrender of the real property valued at $535,000).

15. Between the date of the transfer (October 25, 2002) and the petition date (November 6, 2002), there were no significant changes in the debtors' assets and debts.

## II. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and/or

discovery materials which demonstrate that there is no genuine disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets that initial burden, the burden is shifted to the nonmoving party to go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and/or admissions, designate specific facts showing that a genuine issue of fact does remain for trial. *Id.; see also Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990) (nonmoving party "must show sufficient evidence to create a genuine issue of material fact" to prevail).

### III.  ARGUMENTS

In its memorandum in support of the motion for summary judgment, First National argues that the transfer does not constitute a preference because the debtors were solvent at the time of the transfer, that First National did not receive more than it would have in Chapter 7, and that the transfer occurred in the ordinary course of business.

In response, the debtors assert that they were insolvent at the time of the transfer, as shown by the sale prices of their assets sold post-petition, that First National received $186,000 more than it would have received in Chapter 7, and that while the debt to First National was incurred in the ordinary course of business, the transfer of funds was not in the ordinary course of business between the parties nor has First National provided any proof that it was in the ordinary course of business for the industry.

## IV. DISCUSSION

The issue in this case is whether the pre-petition transfer from the debtors to First National was a preferential transfer. Pursuant to 11 U.S.C. § 547(b), a transfer is preferential where: (1) the transfer was of the debtor's interest in property, (2) to or for the benefit of the creditor on account of an antecedent debt owed by the debtor prior to such transfer, (3) made while the debtor was insolvent, (4) made on or within 90 days before the filing of the bankruptcy petition, and (5) that enabled the creditor to receive more than it would receive in a hypothetical Chapter 7 liquidation if the transfer had not been made. *See **Hildebrand v. Res. Bancshares Mortgage Group (In re Cohee),*** 178 B.R. 154, 156 (Bankr. M.D. Tenn. 1995).

In the present case, there is no dispute that First National received a transfer of the debtors' property for or on account of an antecedent debt owed by one of the debtors prior to the transfer, which occurred within 90 days preceding the filing of the bankruptcy. The parties dispute whether First National received more than it would have in a Chapter 7 liquidation, whether the debtors were insolvent at the time of the transfer, and whether the transfer occurred in the ordinary course of business.

The initial question, which the Court finds is dispositive, is whether First National received more than it would have in a Chapter 7 liquidation. To resolve this issue, the Court

must first determine whether First National was fully secured or undersecured at the time of the transfer.

Payments on a fully secured debt are not preferential. *Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 425 (6th Cir. 1998). Payments on an undersecured debt can be preferential. *Ray v. City Bank & Trust Co. (In re C-L Cartage Co.)*, 899 F.2d 1490, 1493 (6th Cir. 1990); *In re Comptronix Corp.*, 239 B.R. 357, 362 (Bankr. M.D. Tenn. 1999).

Here, First National had a secured loan for the cattle and several secured loans for real property. The loans all included cross-collateralization provisions, thus, the loans were secured by all the collateral, including the real estate and the cattle. However, the proof before the Court indicates that First National was undersecured based on its deficiency balances.

In determining whether the undersecured creditor received a greater percentage recovery than it would have under Chapter 7, two additional questions must be answered: (1) to what portion of the claim was the payment applied (the secured portion or the unsecured portion of the claim), and (2) from what source was the payment made (First National's collateral or not). *See Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, LP)*, 171 F.3d 249, 254 (5th Cir. 1999).

6-U.S. Bankruptcy Court, M.D. Tenn.

Case 1:04-ap-00670    Doc 41    Filed 03/20/06    Entered 03/20/06 14:00:58    Desc Main
Document      Page 6 of 10

As to the first question, the undisputed facts reflect that First National applied $6840.07 to the cattle loan and $186,319.86 to the real estate loans. There is no question that the $6840.07 was applied to a secured portion of the debts. Moreover, with the cross-collateralization provisions, an additional $62,752.98 (the balance owed on the cattle loan) must be considered payment on a secured loan. This leaves a balance of $130,406.95 that could be considered preferential in that it was applied to the unsecured portion of First National's claim.

Generally, when a court, as here, finds that an undersecured creditor applied the payment or a portion of the payment to the unsecured portion of the debt, then the undersecured creditor will have received a greater percentage on the claim if unsecured creditors are not being paid 100% of their claims. *Id.* at 254 (citing ***Flynn v. Midamerican Bank & Trust Co. (In re Joy Flynn Rare Coins, Inc.),*** 81 B.R. 1009, 1018 (Bankr. D. Kan. 1988), and *In re Fitzgerald*, 49 B.R. 62, 65 (Bankr. D. Mass. 1985)).

However, even if the payment was applied to the unsecured portion of an undersecured creditor's claim, the creditor will not be deemed to have received a greater percentage as a result of the payment if the source of the payment is the creditor's own collateral. *Id.* at 255. *See also **Batlan v. TransAmerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.),*** 265 F.3d 959, 971 (9th Cir. 2001); ***Sloan v. Zions First***

*Nat'l Bank (In re Castletons, Inc.),* 990 F.2d 551, 554-55 (10th Cir. 1993). The reasoning is that the assets would have remained in the estate as part of the collateral securing the creditor's debt if the payments had not been made. *In re Smith's Home Furnishings, Inc.*, 265 F.3d at 971.

In the present case, there is no dispute that First National had a security interest in all the cattle sold for a net of $680,000.[1] While the debtors do not dispute that First National had a security interest in the cattle sold, they do assert that First National lost its security interest in the cattle because it failed to take affirmative steps to perfect its security interest as to the proceeds. Accordingly, the debtors argue that the payment did not come from First National's collateral. The Court disagrees.

Pursuant to T.C.A. § 47-9-315, a security interest attaches to any identifiable cash proceeds of collateral. However, once cash proceeds are commingled, they are no longer identifiable except to the "extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law other than this chapter with respect to commingled property of the type involved." T.C.A. § 47-9-315(b)(2).

---

[1] Although, First National was not the only creditor with a security interest in the cattle.

8-U.S. Bankruptcy Court, M.D. Tenn.

Case 1:04-ap-00670    Doc 41    Filed 03/20/06    Entered 03/20/06 14:00:58    Desc Main
Document      Page 8 of 10

Here, it is undisputed that the debtors deposited the cattle proceeds into an operating account, and the fact that the proceeds were commingled does not in and of itself mean that First National's lien was lost. Instead, the Tennessee statute provides that the lien remains if the funds are traceable, and here, the debtors admit that the proceeds were in fact deposited in the operating account and that $200,000 of those funds was paid to First National. The Court finds that there is no dispute that First National retained its security interest in the proceeds. Accordingly, to the extent the payment in question was applied to an unsecured portion of First National's claim, the transfer is not preferential because the payment came from First National's collateral.

Thus, First National did not receive more than it would in a Chapter 7 liquidation, and no preferential transfer occurred.

## V. CONCLUSION

Accordingly, the Court finds that First National's motion for summary judgment should be granted and that the debtors' complaint should be dismissed.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**